Filed 1/15/14  P. v. Cliff B. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CLIFF B.,[1]<br><br>        Defendant and Appellant. | A136992<br><br>(San Mateo County<br>Super. Ct. No. SC074937A) |

**INTRODUCTION**

Defendant Cliff B. appeals an order modifying the terms and conditions of his probation pursuant to Penal Code, section 1203.067,[2] which sets forth various new probation conditions for registered sex offenders.  The order modifying probation required that he attend an approved sex offender management treatment program (program), pay for the program subject to his ability to pay and waive any privilege against self-incrimination, as well as any psychotherapist-patient privilege, while participating in the program.  Defendant challenges the imposition of these additional conditions of probation on jurisdictional and federal and state constitutional grounds, specifically asserting that (1) the modification violated the ex post facto clauses of the

---

[1] At defendant's request, and due to the nature of the underlying offenses of which he was convicted, we do not use his full name in this opinion.  (*See In re E.J.* (2010) 47 Cal.4th 1258, 1267, fn. 4, [in "a departure from [its] usual practice (see Cal. Style Manual (4th ed. 2000) § 5:9, pp. 179–180)," our Supreme Court granted petitioners' request to not disclose their identities, "given the particular subject matter of [the] proceedings"].)

[2] Further statutory references are to the Penal Code unless otherwise noted.

1

federal and state constitutions; (2) the modification was in excess of the court's jurisdiction because no change in circumstances occurred authorizing such modification; (3) the statutory presumption of prospectivity under section 3 precludes retroactive application of section 1203.067 in this case; and, (4) the compulsory waiver of the privilege against self-incrimination violates the Fifth Amendment and article I, section 15 of the California Constitution.

We conclude that revised section 1203.067 must be read to apply prospectively under section 3 and, therefore, cannot be applied retroactively to change the terms and conditions of probation for defendant. Because we reverse the trial court's modification order on that basis alone, we need not address defendant's other jurisdictional and constitutional arguments.[3]

### FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2008, the San Francisco District Attorney filed an information charging defendant with unlawful sexual intercourse with a drugged person (§ 261, subd. (a)(3)), and unlawful sexual intercourse with an unconscious person (§ 261, subd. (a)(4)).[4] On July 12, 2011, pursuant to a negotiated disposition, defendant pleaded guilty to rape of a drugged person. On August 19, 2011, the San Francisco County Superior Court suspended imposition of sentence and placed defendant on formal probation for a period of three years. As conditions of probation, defendant was required to register as a sex offender under section 290 and submit to AIDS testing under section 1202.1. On November 22, 2011, the San Francisco County Superior Court granted the probation officer's motion to transfer the case to defendant's county of residence in San Mateo County.

---

[3] (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [" 'A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.' "].)

[4] The facts of the underlying offense are not relevant to the issue on appeal.

2

Subsequently, on September 11, 2012, the probation officer petitioned the San Mateo County Superior Court to modify the terms and conditions of defendant's probation pursuant to sections 1203.2 and 1203.3. The petition stated: "As of July 1, 2012, the law requires the imposition of specific sex offender conditions to all individuals on probation who are required to register as a sex offender pursuant to Section 290 . . . . Pursuant to Section 1203.067(b)(1) . . . these conditions are to be imposed retroactively to all individuals currently on probation. This includes those who have already completed a non certified sex offender program. [¶] The . . . defendant has been advised of the legal requirement to modify his conditions of probation in accordance with the law and has requested a hearing before the Court." The petition also asserts in summary: "This case was jurisdictionally transferred to San Mateo County on December 30, 2011, with minimal conditions of probation ordered. There is no search and seizure, no chemical testing or abstain from alcohol, and no treatment conditions of any kind imposed. As such, supervision of the defendant and his progress in the community is limited. He has been cooperative and compliant with probation appointments and directives."

Following filing of the petition to modify conditions of probation, the trial court appointed counsel for defendant, set a briefing schedule and calendared the matter for a hearing on October 12, 2012. At the hearing, and after entertaining argument of counsel, the trial court modified the terms and conditions of defendant's probation to include the provisions of amended Penal Code section 1203.067, subdivision (b). The court stayed the order of modification for 30 days. The order of modification stated: "1. Pursuant to Section 290.09 of the Penal Code, you are required to participate in and successfully complete an approved sex offender management treatment program. 2. Pursuant to Section 1203.067 of the Penal Code, the participation in an approved sex offender management treatment program will be for a minimum of one year or up to the entire term of supervised probation, as determined by the sex offender management professional in consultation with the probation officer and as approved by the Court. 3. Submit to random polygraph examinations and waive any privilege against self-incrimination and participation in said polygraph examinations. 4. The psychotherapist-

patient privilege shall be waived, to enable communication between the sex offender management professionals and probation officer."

On November 1, 2012, defendant filed a notice of appeal and on November 8, 2012, filed a petition for writ of supersedeas. On January 23, 2013, we granted the writ of supersedeas and stayed the trial court's probation modification order pending determination of the appeal.

**DISCUSSION**

*A.*     *Applicable Prior and Current Statutory Provisions*

In July 2008, when defendant committed a felony violation of section 261, former section 1203.067 provided: "If a defendant is granted probation pursuant to subdivision (a), the court shall order the defendant to be placed in an appropriate treatment program designed to deal with child molestation or sexual offenders, if an appropriate program is available in the county." (Former § 1203.067, subd. (b), added by Stats. 1994, ch. 918, § 1.) Former section 1203.067, subdivision (c) further provided: "Any defendant ordered to be placed in a treatment program pursuant to subdivision (b) shall be responsible for paying the expense of his or her participation in the treatment program as determined by the court. The court shall take into consideration the ability of the defendant to pay, and no defendant shall be denied probation because of his or her inability to pay."

During defendant's term of probation, the Legislature amended section 1203.067 as part of the Chelsea King Child Predator Prevention Act of 2010 (Chelsea King Act) (Stats. 2010, ch. 219, § 1), to provide, in relevant part:

"(b) On or after July 1, 2012, the terms of probation for persons placed on formal supervised probation for an offense that requires registration pursuant to Sections 290 to 290.023, inclusive, shall include all of the following:

"(1) Persons placed on formal supervised probation prior to July 1, 2012, shall participate in an approved sex offender management program, following the standards developed pursuant to Section 9003, for a period of not less than one year or the remaining term of probation if it is less than one year. The length of the period in the

4

program is to be determined by the certified sex offender management professional in consultation with the probation officer and as approved by the court.

"(2) Persons placed on formal supervised probation on or after July 1, 2012, shall successfully complete a sex offender management program, following the standards developed pursuant to Section 9003, as a condition of release from probation.  The length of the period in the program shall be not less than one year, up to the entire period of probation, as determined by the certified sex offender management professional in consultation with the probation officer and as approved by the court.

"(3) Waiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program.

"(4) Waiver of any psychotherapist-patient privilege to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09.

"(c) Any defendant ordered to be placed in an approved sex offender management program pursuant to subdivision (b) shall be responsible for paying the expense of his or her participation in the program as determined by the court.  The court shall take into consideration the ability of the defendant to pay, and no defendant shall be denied probation because of his or her inability to pay." (§ 1203.067, subds. (b)-(c), amended by Stats. 2010, ch. 219, § 17, eff. Sept. 9, 2010.)

The effective date of the amended statute was September 9, 2010, but its provisions did not become operative until July 1, 2012.  (See § 1203.067, subd. (b).)[5]

## B. *Section 3 and the Presumption that Statutes Operate Prospectively*

"Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent.  When the Legislature has not made its intent on

---

[5] " ' "The effective date [of a statute] is . . . the date upon which the statute came into being as an existing law." [Citation.]  "[T]he operative date is the date upon which the directives of the statute may be actually implemented." [Citation.]  Although the effective and operative dates of a statute are often the same, the Legislature may "postpone the operation of certain statutes until a later time." [Citation.]' [Citation.]" (*People v. Alford* (2007) 42 Cal.4th 749, 753, fn. 2.)

the matter clear with respect to a particular statute, the Legislature's generally applicable declaration in section 3 provides the default rule: 'No part of [the Penal Code] is retroactive, unless expressly so declared.' We have described section 3, and its identical counterparts in other codes (e.g., Civ.Code, § 3; Code Civ. Proc., § 3), as codifying 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.' [Citation.] In applying this principle, we have been cautious not to infer retroactive intent from vague phrases and broad, general language in statutes. [Citations.] Consequently, ' "*a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective.*" ' [Citations.]" (*People v. Brown* (2012) 54 Cal.4th 314, 319–320 (*Brown*), italics added.)

Applying these principles to the statute at bar, the parties reach different conclusions on the retroactivity issue. The People contend the statute is unambiguous as to legislative intent, asserting that because the statute specifically states probationers placed on probation before July 1, 2012 must participate in approved sex offender management treatment programs, the statute must be construed to apply retroactively. Defendant, on the other hand, asserts that viewed in light of section 3's presumption against retroactivity, the most tenable construction is that revised section 1203.067 applies to all probationers whose offenses occurred on or after September 9, 2010.

Our colleagues in Division 2 of this court recently addressed this legal conundrum in *People v. Douglas* (2013) 220 Cal.App.4th 1068 (*Douglas*). The *Douglas* court resolved the issue in favor of the similarly-situated appellant in that case, concluding the People's interpretation "completely ignores both section 3's presumption of prospectivity and the context in which the amendment of section 1203.067 came about." (*Douglas, supra,* at pp. 1075–1076.)

As the *Douglas* court further explained, "The revised statute was enacted as part of Assembly Bill No. 1844 (2009–2010 Reg. Sess.), the Chelsea King Child Predator Prevention Act of 2010 (Chelsea's Law) (Stats. 2010, ch. 219), which altered numerous

6

statutes governing sex offenses and sex offenders. Although the bill was enacted in September 2010 as urgency legislation, intended to take effect immediately (*id.,* at § 29), [fn. omitted] the section 1203.067 amendments did not become operative until July 2012, almost two years later. The apparent reason for this delayed implementation is reflected in other stated requirements of the bill (see, e.g., § 9003 [requiring development and updating of standards for certification of sex offender management professionals and programs]), which were prerequisites to application of the new provisions of section 1203.067. There is nothing in this legislative history that provides ' " 'a clear and compelling implication' " ' that the Legislature intended the revised statute to apply retroactively. [Citation.] [¶] Given this context, the most reasonable interpretation of the language of amended section 1203.067, subdivision (b), regarding '[p]ersons placed on formal probation prior to July 1, 2012,' is that, for those probationers whose offenses occurred between the effective date of September 9, 2010, and the operative date of July 1, 2012, their participation in—though not necessarily completion of—'an approved sex offender management program' would be required.[6] [Citations.] This interpretation fulfills the Legislature's intention that this portion of the urgency legislation would take effect immediately upon enactment, applying to probationers whose offenses occurred on or after that date, even though its provisions could not actually be implemented until July 1, 2012. [Citations.]" (*Douglas, supra,* 220 Cal.App.4th at p. 1076.)

We agree with the analysis propounded by the *Douglas* court on this point and conclude the statutory language does not clearly indicate a legislative intent that section 1203.067 is to be applied retroactively to probationers whose crimes occurred before its effective date. Moreover, the People fail to identify anything in the legislative history,

---

[6] However, there is a further ambiguity in 1203.067 as to whether probationers, whose offenses occurred between the effective date of September 9, 2010 and the operative date of July 1, 2012, would be required to waive the privilege against self-incrimination and the psychotherapist-patient privilege under subsections (3) and (4) because those subsections are governed by the date set forth in subdivision (b)—July 1, 2012.

and our research revealed nothing, which clearly indicates the statute is intended to apply retroactively. (See *Brown, supra,* 54 Cal.4th at pp. 319–320.)

Furthermore, whereas we do not reach defendant's Fifth Amendment claim, we acknowledge that a retroactive application of the statute requiring defendant to waive his privilege against self-incrimination (see § 1203.067, subd. (b)(3)), would arguably implicate the federal and state Constitutions' prohibition against ex post facto laws (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9) by making punishment for the crime more burdensome, (see *Collins v. Youngblood* (1990) 497 U.S. 37, 41–42 [retrospective statute making punishment for a crime more burdensome is an ex post facto law]). This constitutional concern further supports a finding of nonretroactivity under section 3. (See *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 509 [" 'If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.] The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers.' [Citations.]"].)

In sum, there is nothing in either the language of the statute or its legislative history clearly indicating a legislative intent for revised section 1203.067 to be applied retroactively to probationers whose crimes occurred before its effective date. (See *Brown, supra*, 54 Cal.4th at pp. 319–320; *Alford, supra*, 42 Cal.4th at p. 754.) Moreover, to construe the statute as applying to those probationers would raise serious constitutional questions under the federal and state ex post facto clauses. Therefore, in keeping with the mandate of section 3, revised section 1203.067 must be construed as " ' "unambiguously prospective" ' " (*Brown, supra,* 54 Cal.4th at p. 320), applying to probationers whose crimes were committed on or after the statute's effective date of September 9, 2010. Defendant's offense occurred before the effective date of the statute. Therefore, the

provisions of revised section 1203.067 were improperly applied to him and must be stricken.

## DISPOSITION

The trial court's order modifying the conditions of defendant's probation is reversed and the matter remanded for further proceedings consistent with this opinion. The writ of supersedeas is hereby dissolved with immediate effect.


_____
Becton, J.*


We concur:


_____
Dondero, Acting P.J.

_____
Banke, J.


* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9